**SODERHAMN MACHINE MANU-
FACTURING CO.**

v.

**UNITED STATES.**

**Protests 65/8822–752, etc.; C.D. 3225.**

United States Customs Court,
Second Division.
Dec. 13, 1967.

Before RAO and FORD, JJ.

FORD, Judge:

The merchandise covered by the protests listed in schedule "A," annexed hereto and made a part hereof, was described on the invoices generally as chippers, chip screens and parts thereof. At the port of entry, Jacksonville, Florida, the articles were assessed with duty at 10 per centum ad valorem under item 674.42 of the Tariff Schedules of the United States as other machine tools, or at 14 per centum ad valorem under item 674.53 of the same tariff schedule, hereafter referred to as TSUS, as other machine tool parts.

Plaintiff's original claim in every protest except 65/8822 was that the merchandise in issue was properly dutiable at 7 per centum ad valorem under item 668.06 of TSUS as parts of machines for making cellulosic pulp, paper or paperboard.

In protest 65/8822, plaintiff's original claim was that the merchandise was properly dutiable at 7 per centum ad valorem under item 668.00 as machines for making cellulosic pulp, paper or paperboard.

By timely amendments, items 668.00 and 668.06 were asserted alternatively in each of the protests. Defendant interposed no objection except as to protest 65/8822.

At the trial, plaintiff abandoned the protests as they relate to articles not listed on plaintiff's exhibit 1, a schedule of the imported merchandise.

As to one article entered under entry J–3788, covered by protest 65/8825, a center for chipscreen 750–35A, defendant repudiates the classification under item 674.53, supra, contending it should properly have been classified under item 678.50, as machines, not specially provided for.

After the original trial and submission, the submission of the case was set aside, by stipulation of the parties to permit the consolidation of protest

Sharretts, Paley, Carter & Blauvelt, New York City, (M. Barry Levy, New York City, of counsel), for plaintiff.

Edwin L. Weisl, Jr., Asst. Atty. Gen. (Glenn E. Harris and Andrew P. Vance, New York City, Trial Attys.), for defendant.

66/6385 with the other five protests, which had been consolidated at the trial. The pertinent items of the tariff schedules are as follows:

Machine tools:
 Metal-working machine tools:

\* \* \* \* \* \* \* \*

 Other machine tools:

\* \* \* \* \* \* \* \*

674.42 Other .............................10% ad val.

Work and tool holders and other parts of, and accessories used principally with, machine tools; tool holders, for the mechanical hand tools provided for in items 651.27, 674.70 and 683.20:

\* \* \* \* \* \* \* \*

 Other:
 Parts:

\* \* \* \* \* \* \* \*

 Other:

\* \* \* \* \* \* \* \*

674.53 Other parts .........................14% ad val.

\* \* \* \* \* \* \* \*

678.50 Machines not specially provided for, and parts thereof .......................10% ad val.

Machines for making cellulosic pulp, paper, or paperboard; machines for processing or finishing pulp, paper or paperboard, or making them up into articles:

668.00 Machines for making cellulosic pulp, paper or paperboard ....................... 7% ad val.

\* \* \* \* \* \* \* \*

Parts of the foregoing machines:

\* \* \* \* \* \* \* \*

 Other:

668.06 Parts of machines for making cellulosic pulp, paper or paperboard ............. 7% ad val.

———◆———

The following headnotes are also pertinent:

Schedule 6, part 4, subpart F:

For the purposes of this subpart— (a) the term *"machine tool"* means any machine used for shaping or surface-working—

\* \* \* \* \* \*

(iii) wood, cork, bone, hard rubber or plastics, or other hard materials, whether by cutting away or otherwise removing the material or by changing its shape or form without removing any of it, but does not include rolling mills (item 674.20) or the hand-directed or -controlled tools provided for in items 674.60 and 674.70 of this subpart and in item 683.20 of part 5 of this schedule; \* \* \*

10. *General Interpretative Rules.* For the purposes of these schedules—

\* \* \* \* \* \*

(ij) a provision for "parts" of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part.

The evidence in this case consists of testimony of one witness called on behalf of plaintiff, one witness called on behalf of defendant, as well as two exhibits introduced by the plaintiff and two by the defendant.

The following exhibits were received in evidence: Schedule 1, bearing protest, entry number, entry date and description of imported merchandise (plaintiff's exhibit 1); a Soderhamn catalog representative of items described as chip screens (plaintiff's exhibit 2); pamphlet listing normally produced equipment in the Soderhamn machine works and illustrating chip screens and chippers referred to in direct examination (defendant's exhibit A); page from pamphlet (exhibit A), specially marked in red ink, depicting a typical debarking installation and debarking chipper (defendant's exhibit A-1); an advertising brochure of Fulghum Industries, illustrating various types of woodworking equipment, including "The Fulghum Chipper", marked off in red (defendant's exhibit B).

The merchandise in this case is limited to the articles listed on plaintiff's exhibit 1 and those set forth in stipulation of counsel.

Plaintiff's exhibit 1, designated schedule 1, provides as follows:

| Protest No. | Entry No. | Entry date | Merchandise |
|---|---|---|---|
| 65/8822–752/65 | J-154 | 7-15-64 | Chipper screen parts for screen 750-35A center upper ball washer, lower ball washer, counterweight with bushing, |
| | | | Chipper Screen 750-35A, 48″ old type horizontal chippers, 6 knife, less infeed spouts. |
| 65/8823–752-A/65 | J-154 | 7-15-64 | Parts for chipper 670–48 Bolts for chipper knife ¾″ x 125 Springs Distance Rings Nuts HB 6LM ¾″ Washers BRFB 20 x 36 |
| 65/8825–754/65 | J-3788 | 6-29-64 | Center for chip screen 750-35A Shaft for Chipper C-461160–1 |
| 65/14309–782/65 | J-1559 | 11-23-64 | Feedbox assembly, left hand form, for chipper HF-30 |
| | | For | Chipper 670–48 |
| | | a | Housing for pillos block SN-522 |
| | | b | Sleeve SKFH-322 |
| 65/14312–784/65 | J-1196 | 10-22-64 | HF-60 L/H Chipper Feedbox complete for 711-A |

It was stipulated by counsel for the respective parties that the merchandise described in entry J–154 and the subject of protest 66/6385, consists of chip or chipper screen parts, which are the same in function as the chipper screen parts which were the subject of the testimony at the trial on March 4, 1966, and that the testimony of the witnesses at the trial, with respect thereto, be deemed to apply to the chip or chipper screen parts covered by entry J–154.

The issue for determination in this case is clearly drawn. The court must determine whether the merchandise in issue falls within the provisions of items 674.42, 674.53, or 678.50, as other machine tools or parts, or with respect to one entry, "machines not specially provided for, and parts thereof"; or is more properly dutiable under the provisions of items 668.00 and 668.06, as machines for making cellulosic pulp, paper, or paperboard and parts thereof.

Plaintiff has a twofold burden of proof: First to show that the merchandise is not a machine tool or a part thereof; and, second, to show that the machines and parts are used for making cellulosic pulp.

In attempting to meet this burden, plaintiff offers the testimony of W. Maynard Gaitten, chief engineer of the importer Soderhamn Machine Manufacturing Co., a firm engaged in making special machines, sawmill machines and pulp producing machines, as well as importing machinery from Sweden.

Mr. Gaitten is a graduate of Ohio State University, with a degree in industrial design, has been a machine designer for nearly 20 years, and is familiar with the involved merchandise, having helped design, install and modify it.

The witness examined all invoices before the court and testified that the merchandise descriptions appearing on each entry number correspond to descriptions on the invoice. He described each of the items appearing on schedule 1 (exhibit 1), together with their functions as follows:

The first part is Chipper Screen parts for 750–35–A. It is listed as an upper ball washer, a lower ball washer. These two items are the rotating item on which the screen is resting. It revolves or reciprocates around these ball washers.

The third item, another counterweight with bushing. This is used to balance the screen in its rotation.

The next item is a Chipper Screen 750–35–A. I assume that means the complete machine, because the next item is the 48-inch old type horizontal chippers, 6-knife less infeed spout.

The next item is parts for Chipper 670–48, which means 48-inch chipper horizontal feed. It is bolts for a knife which are special "T" head bolts springs, which fit around the bolt, distance rings, which space the bearings and decrease the distance between the disc and the anvil nuts and washer for a special bearing.

\* \* \* \* \* \*

It is a center for a Chip Screen. This is the large housing with perforated holes through which the Chips pass.

The next item, shaft for Chipper. The number tells me that it is an old type HF 60 Chipper.

\* \* \* \* \* \*

\* \* \* The item, feed box assembly left-hand form for Chipper HF 30, these are feed control Chippers. 30 means a smaller size.

\* \* \* \* \* \*

It should be listed "Parts for Chipper"; and the parts are a housing for a large adjustable bearing and a sleeve to adapt it to its shaft.

The last item is HF 60 left-hand Chipper feed box, complete, which is used to feed the wood into the disc of the Chipper.

Mr. Gaitten's testimony with respect to processing of wood pulp and screening was extensive. The court considers the witness to be qualified insofar as the mechanical part of pulpmaking is concerned.

In describing the use of the imported merchandise, Mr. Gaitten testified as follows:

> The Chippers are used to convert wood in the first stage of making pulp. You make a pulp chip, then you digest the pulp chip. The purpose of the Chipper is to do this first function.

The witness then went on to describe the manufacture of cellulosic pulp.

> The first stage is to convert your wood to a suitable pulp chip. The pulp chip is then screened, and then put into digesters, and by chemical and heat action converted to a usable pulp.

Mr. Gaitten described the term "screen" as "a intermediate machine, to help make more uniform and to make a more desirable pulp chip." He testified that under "most conditions it is essential" to the manufacture of pulp chip.

As to the nature of "cellulosic pulp", he testified it is "all pulp made from wood members, commonly called a tree." All wood is cellulosic and chips or ground wood is necessary to make pulp.

The witness also testified that the imported merchandise is not used to finish or process pulp but to make pulp. In response to the question whether he drew a distinction between the material, chips, used in making pulp, and pulp itself, he testified there was, stating as follows:

> Yes, there is a distinction, the second process of making pulp. First, you have a mechanical process. Practically all pulp is made by a mechanical process, to start with, and once you have done your mechanical process to the best of your ability then you do a chemical process on it, then you have the completed pulp. You can't make pulp without both stages. There is a small amount of production made by ground wood, which is an intermediate step. Instead of going through the pulp chip phase they go from a ground wood to a very fine material by using grinding wheels.

Mr. Ernest C. Pundt of Wadley, Georgia, testified in behalf of the defendant. He has been employed by the Fulghum Industries Inc., as controller, having held that position for approximately 5 years. Prior to that time, he had been vice president of the Carl W. Mullis Engineering & Manufacturing Company of Lancaster, Pennsylvania.

Both companies manufacture "Log debarkers, Chippers, Screens, Chip Screens, conveyors, bark waste conveyors, several decks that might move logs to a sawmill or away from a sawmill."

The witness testified that, in the course of his duties, as vice president he visited mills and was involved in sales from "the States of Washington, Oregon, Idaho, Montana, throughout the Southeast up to Pennsylvania, Maryland."

As controller of the Fulghum company, Mr. Pundt's duties are primarily administrative but he does some traveling, visiting sawmills.

The witness testified that he had seen the chip screens manufactured and sold by Soderhamn, as depicted in plaintiff's exhibit 2; that he had seen "various and sundry types of Soderhamn Chippers in operation in sawmills" but had not seen an imported Soderhamn chipper in operation.

Mr. Pundt gave considerable testimony as to the use of chippers but was unable to testify with respect to the merchandise at issue. He testified that, after chips have been produced in a chipper, the chip screen serves the following function:

> The wood chips are normally dropped on a screen—various types of screen— the vibrator or roller screen for the purpose of separating the sized chips into categories. Oversized go one way because they are too large, and the fine ones are dropped to the bottom, and they are not suitable to be used.
>
> \* \* \* \* \* \*
>
> They don't meet the requirement of the paper companies that are buying them.

The witness testified that fine chips are sometimes "used to fire the boilers,

or they could be used for chicken litter." When the chips are sold to pulpmills, by-products, viz, chemicals and turpentine are obtained from the process of making pulp.

On cross-examination, Mr. Pundt testified that the primary purpose of a wood chipper, performing the functions of the imported merchandise is "To utilize waste slabs from a sawmill into salable wood chips", to produce chips. He stated that he knew of no other function than to produce chips. He also testified that, in most instances, screening is essential for the production of industrial pulp and that "Probably 90 per cent" of the chips are used in the production of pulp and paper.

Defendant in its brief argues that the imported merchandise is not used to make cellulosic pulp but to make material from which pulp may be produced. Since it is neither dedicated to use in making pulp, nor chiefly used in installations making pulp, defendant maintains it should be excluded from items 668.00 and 668.06.

 We are concerned with the term "making cellulosic pulp," which is found in both items of TSUS. The common and commercial meaning of a tariff term is presumed to be the same, in the absence of evidence to the contrary. In determining the common meaning, the court may accept or reject testimony of such meaning and may, as an aid, consult dictionaries and other authorities. United States v. C. J. Tower & Sons of Buffalo, N.Y., 48 CCPA 87, 89, C.A.D. 770.

The Dictionary of Paper published under the auspices and direction of the American Paper and Pulp Association, New York, N. Y., supplies the following definitions of the terms "pulping", "pulp", "pulpwood", "cellulose", and "chip".

PULPING.—The operation of transforming a raw papermaking material, such as pulpwood, rags, straw, waste papers, etc., into a pulp which, after suitable beating, refining, bleaching,

etc. is capable of being formed into paper or board. [Page 290.]

PULPWOOD.—Those woods which are suitable for the manufacture of chemical or mechanical wood pulp. The wood may be in the form of logs as they come from the forest or cut into shorter lengths suitable for the chipper or the grinder. [Page 290.]

Pulp for paper and chemical uses is the crude fiber material * * * that is produced either mechanically or chemically from fibrous cellulose raw material and from which, after suitable treatment, paper, paperboard, rayon, plastics, and the like are made.

According to origin, pulps may be classified as wood * * * and, according to process of manufacture, as mechanical, semichemical, chemical, etc., * * *.

* * * * * *

Wood pulp is pulp manufactured either by mechanical or chemical means from coniferous or broadleaf trees. * * * In addition to its use by the paper and board industry, bleached and purified chemical wood pulp is widely employed for rayon and other products involving a chemical conversion of the cellulose fiber. [Page 6.]

CELLULOSE.—From the organic point of view, a complex carbohydrate structure, occurring in all vegetable material, and composed of long chain molecules built up through the union of glucose molecules. * * * Cellulose, from the point of view of the pulp and paper industry, approaches the above ideal but never quite reaches it. Wood cellulose, for example, is that material remaining after a large portion of lignin and certain of the carbohydrates, other than cellulose, have been removed by the pulping and bleaching operations. * * * [Pages 100, 101.]

CHIP. * * * (2) A small piece of wood produced by the chipper and used in digesters for the manufacture of chemical wood pulp. [Page 105.]

The record clearly establishes that the involved chippers produce a product, chips, which is used by the paper industry to manufacture pulp. While the record does indicate that sometimes chips are used to fire boilers, even the witness on behalf of defendant admitted that probably 90 percent of the chips are used in the production of pulp. This, in our opinion, is sufficient to establish that said chippers are chiefly used for making pulp and fall within the purview of item 668.00 and item 668.06 if the chippers are in truth and in fact machines.

Item 668.00 of TSUS covers "Machines for making cellulosic pulp, paper or paperboard." The TSUS does not define "machines". This decision is the first promulgated under item 668.00 of the Tariff Schedules of the United States and, consequently there is no case law controlling the statutory language involved herein.

■ Under the various tariff laws, while many items have been held to be or not to be, machines, there has been no judicial determination of what a machine is. The courts have held it to be simply a question of common meaning and each case must be decided on the basis of its own facts, technical and legislative. United States v. IDL Mfg. & Sales Corp., 48 CCPA 17, C.A.D. 756.

The Dictionary of Paper, supra, defines "CHIPPER" as follows at page 105:

CHIPPER.—A machine consisting essentially of a revolving disk equipped with long heavy knives, set approximately in a radial direction, which cuts pulpwood into slices or chips, diagonal to the grain.

The dictionary definition substantiates that given by Mr. Gaitten.

■ Samples are recognized by the courts as potent witnesses in customs law. Slab Chipper 711–A and Chipper 670–A are illustrated in the Soderhamn pamphlet received in evidence as defendant's exhibit A. The testimony also establishes that except for these chippers, none of the items appearing on schedule 1 (plaintiff's exhibit 1) have any other

use than with the imported chipping machinery.

In the case of Bird Machine Company v. United States, 51 CCPA 42, C.A.D. 835, and in particular the portion of the decision involving the "Skardal stock preparator" the court found said machine to fall within the purview of the predecessor provision contained in paragraph 372, Tariff Act of 1930, as modified. The Court of Appeals, in approving the dissenting opinion of the Customs Court, quoted the following:

* * * Chippers, grinders, refiners, and beaters are stock treating elements which are parts of the pulp making process. Yet, *they appear to have been the very machines* for making paper and pulp accorded separate tariff status by the new language and, hence, are not the stock treating parts provided for in paragraph 356. [Italics quoted.]

It would, therefore, appear that the predecessor provision, of paragraph 372, supra, was intended to embrace chippers.

■ In view of the foregoing and based upon the dictionary definition, and the uncontradicted testimony in the record, we are of the opinion that the chippers and parts listed in plaintiff's exhibit 1 and covered by protest 65/8822 are machines for producing a product, chips, which is chiefly used in making cellulosic pulp, and as such are properly classifiable within the *eo nomine* provisions therefor in item 668.00, TSUS, which provide for duty at the rate of 7 per centum ad valorem. The motion to amend protest 65/8822 is, therefore, granted.

■ The record further discloses that a chip screen is one of the devices used in the process of making pulp. It is described as an "intermediate machine, to help make more uniform and to make a more desirable pulp chip," which under most conditions is essential to the manufacture of pulp chip. It is clear from the record that such screens are machines.

For the foregoing reasons, we hold the involved screens to be "machines for

making cellulosic pulp, paper or paperboard" in item 668.00, TSUS. The claim of plaintiff that they should have been so classified and assessed with duty at the rate of 7 per centum ad valorem is sustained.

We are of the opinion that the remaining merchandise covered by these protests and set forth in schedule 1 are parts of machines for making cellulosic pulp. The TSUS declares the classification of such merchandise without ambiguity. General Interpretative Rule 10 (ij) states as follows:

> * * * a provision for "parts" of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part.

The record in the case at bar establishes that the remaining items have no other use than with the imported chipping machinery. The court finds no specific provisions in TSUS for such merchandise. We, therefore, hold the remaining items listed in schedule 1 to be parts of machines and properly classifiable as "Parts of machines for making cellulosic pulp, paper or paperboard" within the purview of item 668.06, and subject to duty at the rate of 7 per centum ad valorem; as claimed by plaintiff.

Plaintiff having abandoned protests as they relate to articles not listed on the schedule of imported merchandise, plaintiff's exhibit 1, its claims with respect thereto are hereby dismissed.

Judgment will be entered accordingly.

RAO, C. J., concurs.

<u>SCHEDULE "A"</u>

AND

<u>SCHEDULE OF PROTESTS</u>

| Protest | Plaintiff | Entry |
|---|---|---|
| 65/8822–752 | Soderhamn Machine Manufacturing Co. | J–154 |
| 65/8823–752–A | | J–154 |
| 65/8825–754 | | J–3788 |
| 65/14309–782 | | J–1559 |
| 65/14312–784 | | J–1196 |
| 66/6385–862–B | | J–154 |